IN THE UNITED STATES DISTRICT COURT FOR THE
EASTERN DISTRICT OF VIRGINIA

Alexandria Division

| | | |
|---|---|---|
| Keith R. Wood, | ) | |
|     Plaintiff, | ) | |
| | ) | |
| v. | ) | 1:07cv602 (GBL/JFA) |
| | ) | |
| Cheryl Robinson, et al., | ) | |
|     Defendants. | ) | |

## MEMORANDUM OPINION

THIS MATTER is before the Court on Cheryl B. Robinson and Clarence T. Woody's Motion for Summary Judgment. This case concerns a claim by Keith R. Wood, a Virginia inmate proceeding pro se, that defendants Robinson, Woody, and Stanley Furman violated plaintiff's right under the Eighth Amendment to be free from cruel and unusual punishment in their response to the injuries that plaintiff sustained as the result of a 2006 attack by another inmate. The issue before the Court is whether there is a genuine issue of material fact as to whether defendants were deliberately indifferent to plaintiff's medical needs, thus subjecting him to cruel and unusual punishment in violation of the Eighth Amendment. The Court concludes that judgment must be entered for defendants Robinson and Furman because no genuine issue of material fact is present as to whether these medical defendants were deliberately indifferent to plaintiff's medical needs. The Court concludes further that judgment must also be entered for defendant Woody because no genuine issue of material fact is present as to whether this non-medical defendant was deliberately indifferent to plaintiff's medical needs.

### I. Background

On September 18, 2006, while incarcerated at the Richmond City Jail ("jail" or "the jail") in Richmond, Virginia, plaintiff suffered a "blind side" attack from another inmate. Plaintiff

alleges that after suffering the attack, he either informed an unnamed deputy that he needed medical attention or requested that the deputy take him to the jail's medical department. On September 19, 2006, plaintiff was taken to the jail's Medical Services Department ("MSD") and was evaluated by jail physician Furman, who ordered that plaintiff be given Motrin medication and eye drops. Plaintiff asserts that he requested to be taken to the emergency room, but his request was denied and he was taken back to his housing unit. Later, plaintiff was taken back to the MSD, and an unnamed nurse sent him to the emergency room of the local hospital. Once in the emergency room, plaintiff was, in his words "administered something" for the pain and an MRI was performed, revealing multiple fractures to the bones around his right eye and cheek bone. Plaintiff was subsequently released from the emergency room, and after he returned to the jail, he claims that family members requested that he be evaluated by a surgeon. A surgery was scheduled for December 14, 2006, but before that surgery could be completed, plaintiff was released from the jail. Plaintiff alleges that he was then transferred to another correctional facility and that the surgery scheduled for December 14 was cancelled. He claims that he lives in constant pain, suffers severe headaches, cannot open his mouth "wide" and that his broken bones were permitted to "heal wrong" over 11 weeks in the jail during which time he claims that "nothing was done."[1]

On or about June 6, 2007, plaintiff filed the instant civil rights action, pursuant to 42 U.S.C. § 1983, which, liberally construed, alleges that defendants Robinson, the jail's medical

---

[1] Plaintiff also alleges that his present institution is not "doing anything to help him." To the extent that plaintiff is attempting to allege a claim of deliberate indifference against persons at his current institution of confinement, such claim is not before the Court are not addressed in this Memorandum Opinion.

director, Furman, the jail's doctor and Woody, the sheriff, violated his right under the Eighth Amendment to receive adequate medical care. On September 20, 2007, defendants Woody and Robinson filed an answer to the complaint, and on October 22, 2007, these defendants filed a Motion for Summary Judgment, a memorandum of law in support of that Motion, a Notice pursuant to Local Civil Rule 7(K) and Roseboro v. Garrison, 528 F.2d 309 (4th Cir. 1975).[2] Attached to the Motion for Summary Judgment are unsworn declarations complying with 28 U.S.C. § 1746 and accompanying medical records. Defendants' largely uncontested evidence contradicts plaintiff's assertion that "nothing" was done in response to the injuries he sustained.

According to that evidence, plaintiff complained of a right-eye injury, discoloration, swelling and blurred vision during his September 19 examination at the MSD. Robinson Decl. dated Oct. 22, 2007 ("Robinson Decl.") ¶ 4; Attch. 1, Nurse's Note dated Sept. 19. A certain Lt. Cushionberry, who is not named as a defendant, prescribed plaintiff Motrin medication, artificial tears and ordered an orbital x-ray of plaintiff's right eye. Robinson Decl. ¶ 4 & Attch. 1, Nurse's Note dated Sept. 19. Later that day, plaintiff was again taken to the MSD and this time complained that he had fallen down in the shower and hit his head on a toilet. Robinson Decl. ¶ 5; Attch. 2, Nurse's Note dated Sept. 19. A nurse Kirkland, who is also not named as a defendant, noted that plaintiff had an edema, right-eye discoloration and a low-grade fever. Robinson Decl. ¶ 5; Attch. 2, Nurse's Note dated Sept. 19. Kirkland gave plaintiff an ice pack

---

[2] By Order dated August 20, 2007, Notices of the Lawsuit and Requests for Waiver of Service of Summons were issued to defendants Robinson, Woody and Furman. On September 14, 2007, defendants Woody and Robinson waived service of process. Defendant Furman did not respond, and counsel for defendants Woody and Robinson informed the Court that he did not represent Furman and had no intention of doing so in the future. By Order dated October 29, 2007, summons was issued to defendant Furman at the Richmond City Jail, but Furman has not responded to the Court's Orders.

and a referral to the Medical College of Virginia Hospital ("MCV Hospital") for a follow-up evaluation. Robinson Decl. ¶ 5; Attch. 2, Nurse's Note dated Sept. 19. After an overnight stay at the MCV Hosptial, plaintiff returned to the jail on September 20, 2006 with a prescription for medication. Robinson Decl. ¶ 6; Attch. 3, Nurse's Note dated Sept. 20. A physician's assistant on-call at the time of plaintiff's return and also not named as a defendant declined to fulfill the prescription so as to allow the jail doctor to determine whether plaintiff, who was already taking the medication Darvocet, could take the other medication at the same time. Attch. 3, Nurse's Note dated Sept. 20. Eight days later, on September 28, 2006, defendant Furman, the jail's doctor, requested that plaintiff be evaluated at the MCV Hospital's Opthalmalogy Clinic ("opthalmology clinic") for a subconjunctival hemmorage. Robinson Decl. ¶ 7; Attch 4. That request was faxed to the MCV Hospital the next day. Attchs. 4-5.

On October 10, 2006, plaintiff was evaluated by defendant Furman. Robinson Decl. ¶ 8. Plaintiff indicated that he was still suffering facial pain, that the Darvocet prescription was not working and that he still did not have an appointment at the opthalmology clinic. Id.; Attch. 5, Physican Note dated Sept. 29. Furman discontinued plaintiff's Darvocet prescription and prescribed the medicine Ultram. Robinson Decl. ¶ 8; Attch. 5, Physician Note dated Sept. 29. On October 17, 2008, after the MDS confirmed that plaintiff had an appointment there, plaintiff was examined in the opthalmology clinic. Robinson Decl. ¶ 8-9; Attch. 6. Plaintiff was diagnosed with a lateral wall fracture, but the examining medical staffer could find no apparent defect in plaintiff's vision. Robinson Decl. ¶ 9.; Attch. 7, Physician Note dated Oct. 17. Appointments were then scheduled for plaintiff in the MCV Hospital's Ear, Nose and Throat Clinic ("ENT Clinic") for October 19, 2006 and in the opthalmology clinic for October 25, 2006.

Robinson Decl. ¶ 9; Attch. 7, Physician Note dated Oct. 17.

On October 19, 2006, plaintiff was transported to the MCV Hospital for his appointment at the ENT clinic. Robinson Decl. ¶ 10. Three hours after his arrival, plaintiff still had not been examined, and ENT clinic personnel informed jail officials that they were unsure when Wood would be seen. Id. Wood was returned to the jail that day. Defendant Furman completed another request for plaintiff to be seen in the ENT clinic on October 20, and a new appointment was scheduled for plaintiff in that clinic for November 3, 2006. Id.; Attch. 8. On October 25, 2006, plaintiff was transported to the MCV hospital for his opthalmology appointment, but the physician was not in the opthalmology clinic that day, and plaintiff was returned to the jail. Robinson Decl. ¶ 11. On November 3, 2006, plaintiff was taken to his appointment at the ENT clinic. Three days later, plaintiff was scheduled for "open reduction and internal fixation" surgery of his "right zygomatic and right orbital fractures" at MCV hospital. Id. ¶ 12. The surgery, scheduled for December 14, 2006, was approved by defendant Furman on November 14, 2006.

The day after his surgery was scheduled, plaintiff was again examined by defendant Furman, who noted that plaintiff's medication regimen was "not holding" him. Id. ¶ 13; Attch. 11, Physician Note dated Nov. 7. Accordingly, Furman discontinued the Ultram and prescribed the medication Triamcinolone. Attch. 11, Physician Note dated Nov. 7. On November 17, 2006, plaintiff was transported to the opthalmology clinic for follow-up care. Robinson Decl. ¶ 14. On November 27, 2006, plaintiff was transferred out of the jail. Id. ¶ 15.[3]

---

[3] On November 22, 2006, plaintiff appeared in the Circuit Court for the City of Richmond on the Commonwealth of Virginia's motion to release him on a personal recognizance bond. Pltf. Attch. 10, Trans. Dated Nov. 22, 2006. At that proceeding, the Commonwealth's attorney informed

5

In his response to defendants' Motion, plaintiff asserts, without providing any evidence in support, that he was scheduled to be seen in the ENT clinic on September 22, 2006 but was not taken to that appointment. He admits that he was seen in the opthalmology clinic on October 17 and was taken to MCV hospital on October 19 and 25. He also admits that he was seen by an unidentified "ocular surgeon" in November of 2006 and that this visit prompted the scheduling of his December 14 surgery. He admits further that he had a "follow up appointment with opthalmology" where an unspecified person "mentioned" surgery and noted that plaintiff's fractures had to be "reset" through the ENT clinic and that there was nothing that the opthalmology clinic could do for him. Plaintiff has also submitted what appear to be copies of letters from plaintiff's sister, in which plaintiff's sister complained about plaintiff's medical attention and requested that plaintiff receive such attention. In reply, defendants Robinson and Woody have submitted declarations in which they each assert that they did not cancel plaintiff's September 22 ENT clinic appointment or his December 14 surgery. Robinson Decl. dated Nov. 26, 2007 ¶ 5; Woody Decl. dated Nov. 26, 2007 ¶ 3. Moreover, defendant Woody admits that he received two letters from plaintiff's sister. Woody Decl. dated Nov. 26, 2007 ¶ 2.

## II. Standard of Review

In reviewing defendants' Motion for Summary Judgment, the Court must view the facts in the light most favorable to the party opposing the motion. Porter v. U.S. Alumoweld Co., 125 F.3d 243, 245 (4th Cir. 1997). Summary judgment is appropriate where there is "no genuine

---

the trial judge that a Colonial Heights, Virginia detainer had been placed on plaintiff. Id. at 5. Plaintiff's attorney did not object to the Commonwealth's motion and plaintiff's $15,000.00 bond was reduced to a $7,500.00 personal recognizance bond. Id. at 4, 8. Plaintiff was transferred from the jail to the Riverside Regional Jail on November 27, 2006.

issue as to any material fact and that the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(c); see Celotex Corp. v. Catrett, 477 U.S. 317, 322 (1986). A "genuine" issue of material fact is present "if the evidence is such that a reasonable jury could . . . return a verdict for the non-moving party." Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986). "When a motion for summary judgment is properly made and supported . . ., an opposing party may not rely merely on allegations or denials in its own pleading; rather, its response must ... set out specific facts showing a genuine issue for trial." Fed. R. Civ. P. 56(e)(2). Unsubstantiated, conclusory claims without evidentiary support are insufficient to satisfy a non-moving party's burden on summary judgment. Carter v. Ball, 33 F.3d 450, 461-62 (4th Cir. 1994); Goldberg v. B. Green & Co., 836 F.2d 845, 848 (4th Cir. 1988).

### III. Discussion[4]

---

[4] In prisoner suits challenging conditions of confinement, "[n]o action shall be brought with respect to prison conditions under [42 U.S.C. § 1983] or any other Federal law, by a prisoner confined in any jail, prison, or other correctional facility until such administrative remedies as are available are exhausted." 42 U.S.C. § 1997e(a); see Woodford v. Ngo, 126 S.Ct. 2378, 2387 (2006) (requiring complete exhaustion of correctional facility administrative remedies). To satisfy § 1997e(a)'s requirement of exhaustion, a prisoner must give his correctional institution a "full opportunity to consider the grievance," by complying with the institution's procedural requirements for filing grievances. Woodford, 126 S.Ct. at 2389. An inmate is not required to allege or demonstrate that he has exhausted his administrative remedies. Jones v. Bock, — U.S. —, 127 S.Ct. 910, 913 (2007); Anderson v. XYZ Correctional Health Services, 407 F.3d 674, 677 (4th Cir. 2005). Rather, prison officials have the burden of proving that the inmate had available remedies which he did not exhaust. Plaintiff alleges that he filed three grievances addressing the claims raised in the complaint in October and November, 2006 and appealed them to a higher level of review within the jail. Nothing in defendants' Motion for Summary Judgment or subsequent response addresses whether plaintiff complied with the jail's procedural requirements for filing and appealing a grievance, and defendant has presented no evidence to suggest that plaintiff failed to exhaust administrative remedies that were available to him. Accordingly, the Court proceeds to address the merits of the instant claim.

1. <u>Defendants Robinson and Furman</u>

Prisoners are entitled to reasonable medical care and can sue prison officials under the Eighth Amendment[5] if such care is inadequate. <u>Estelle v. Gamble</u>, 429 U.S. 97, 104-05 (1976). However, to establish that inadequate medical treatment rises to the level of a constitutional violation, a plaintiff show the presence of "acts or omissions sufficiently harmful to evidence deliberate indifference to serious medical needs." <u>Id.</u> at 105; <u>see also</u> <u>Staples v. Va. Dep't of Corr.</u>, 904 F. Supp. 487, 492 (E.D. Va. 1995). Under this standard, a prisoner must establish the presence of two distinct elements to garner relief. First, he must establish the presence of a serious medical need. <u>See, e.g.</u>, <u>Cooper v. Dyke</u>, 814 F.2d 941, 945 (4th Cir. 1987) (determining that intense pain from an untreated bullet wound is sufficiently serious); <u>Loe v. Armistead</u>, 582 F.2d 1291 (4th Cir. 1978) (concluding that the "excruciating pain" of an untreated broken arm is sufficiently serious). Second, he must show that defendants were deliberately indifferent to that serious medical need.

For this second prong, an assertion of mere negligence or malpractice is not enough to constitute an Eighth Amendment violation. <u>Estelle</u>, 429 U.S. at 106; <u>Daniels v. Williams</u>, 474 U.S. 327, 328 (1986); <u>Miltier v. Beorn</u>, 896 F.2d 848, 851 (4th Cir. 1990). A prisoner's disagreement with medical personnel over the course of his treatment does not establish deliberate indifference. <u>Wright v. Collins</u>, 766 F.2d 841, 849 (4th Cir. 1985); <u>Russell v. Sheffer</u>, 528 F.2d 318, 319 (4th Cir. 1975) (per curiam); <u>Harris v. Murray</u>, 761 F. Supp. 409, 414 (E.D. Va. 1990). Further, "[a]

---

[5] Plaintiff does not disclose whether he was a pre- or post-trial detainee during the time of the events about which he complains. However, it is well-established that the Fourteenth Amendment due process rights of a pre-trial detainee are at least as great as the Eighth Amendment protections available to a convicted prisoner. <u>Patten v. Nichols</u>, 274 F.3d 829, 834 (4 Cir. 2001) (citing <u>City of Revere v. Mass. Gen. Hosp.</u>, 463 U.S. 239 244 (1983)). As such, plaintiff's claims regarding his medical care will be evaluated under the Eighth Amendment's deliberate indifferent standard.

complaint that a physician has been negligent in diagnosing . . . a medical condition does not state a valid claim of medical mistreatment under the Eighth Amendment." Estelle v. Gamble, 429 U.S. 97, 106 (1976). "Deliberate indifference may be demonstrated by either actual intent or reckless disregard." Miltier, 896 F.2d at 851. However, the prisoner must demonstrate that defendants' actions were "[s]o grossly incompetent, inadequate, or excessive as to shock the conscience or to be intolerable to fundamental fairness." Id. (citations omitted).

Judgment will be granted in favor of medical defendants Robinson and Furman because the evidence makes clear that no genuine issue of material fact is present as to whether these defendants were deliberately indifferent to plaintiff's medical needs. The parties do not dispute that plaintiff's medical need was serious, and, indeed, the uncontested medical evidence in this case makes it abundantly clear that plaintiff's injury was sufficiently serious so as to meet the Eighth Amendment's objective standard. See Farmer v. Brennan, 511 U.S. 825, 832-35 (1994); Brice v. Va. Beach Corr. Ctr., 58 F.3d 101, 104 (4th Cir. 1995).

As to the question of whether defendant Furman, the jail's doctor, and defendant Robinson, the jail's medical administrator, were deliberately indifferent to plaintiff's serious medical need, the evidence makes clear that no genuine issue of material fact exists as to whether they were. It is uncontested that the day after his injury, plaintiff was evaluated in the jail's MSD, treated with medication and given an ice pack and referred to the MCV hospital for further evaluation and testing. Appointments were made for plaintiff on defendant Furman's authorization in the ENT and opthalmology clinics and medical officials in the MCV hospital system and defendant Furman continually monitored and adjusted plaintiff's prescription medications. Additionally, it is uncontested that plaintiff was evaluated at the opthalmology and

ENT clinics and that surgery to correct his injuries was scheduled. There is also no dispute, on the basis of the evidence presented, that plaintiff was taken to all scheduled MCV hospital appointments, and to the extent that a dispute exists concerning the September 22 appointment, there is simply no indication from the record that any of the named defendants had any personal involvement in plaintiff's failure to be transported to that appointment. The uncontested evidence also establishes that defendant Robinson did not cancel plaintiff's December 14 surgery, and there is simply no allegation in the complaint or any evidence supporting a claim that defendant Furman was personally involved in the cancellation of that surgery. Moreover, there is simply no allegation nor is there any evidence in the record to suggest that any of the named defendants had any personal involvement in the decisions by MCV medical personnel to not be present in the hospital for some of plaintiff's appointments there. Finally, although he does not state it directly, there is some indication in his pleadings that plaintiff disagrees with the treatment rendered by MCV hospital personnel or defendant Furman. But as noted, such disagreement is simply not actionable in this § 1983 proceeding. In short, the record in this case makes clear that defendants Furman and Robinson did not act in a manner "[s]o grossly incompetent, inadequate, or excessive as to shock the conscience or to be intolerable to fundamental fairness," Miltier, 896 F.2d at 851. As such, summary judgment will be granted in their favor.

2. Defendant Woody

As to defendant Woody, who is not a member of the jail's medical staff, the Court concludes that judgment must be entered in his favor because there is no genuine issue of material fact as to whether this defendant acted with deliberate indifference to plaintiff's serious

medical need. Although non-medical jail employees can be found to have acted with deliberate indifference if they intentionally delay or deny an inmate access to medical care or intentionally interfere with his prescribed treatment, Estelle, 429 U.S. at 104-05, there is simply no allegation in the complaint, nor is there any evidence to suggest, that Woody in anyway personally interfered with plaintiff's evaluations by jail and MCV medical staff, medical treatment or the scheduling of various appointments and referrals that took place from September through November. Moreover, plaintiff simply has presented no evidence that contradicts Woody's declaration that he did not cancel plaintiff's September 22 appointment or the December 14 surgery. Although it appears from plaintiff's evidence that defendant Woody did request that plaintiff be transferred from the jail to face charges in another jurisdiction, that request, without more, is not evidence that Woody intentionally interfered with plaintiff's access to medical care.

Finally, defendant Woody, as the individual responsible for supervising the overall operation of the jail, is not liable to plaintiff in a supervisory capacity. In certain circumstances, supervisory officials may be held liable for the constitutional injuries inflicted by their subordinates. See Shaw v. Stroud, 13 F.3d 791, 798 (4th Cir. 1994) (citing Slakan v. Porter, 737 F.2d 368 (4th Cir. 1984)). This liability, however, is not premised on respondeat superior, but upon a "recognition that supervisory indifference or tacit authorization of subordinates' misconduct may be a causative factor in the constitutional injuries they inflict on those committed to their care." Id. at 798 (quoting Slakan, 737 F.2d at 372-73). "[L]iability ultimately is determined 'by pinpointing the persons in the decision-making chain whose deliberate indifferent permitted the constitutional abuses to continue unchecked.'" Id. (quoting Slakan, 737 F.2d at 376). In order to establish supervisory liability under § 1983, there are three necessary

11

elements:

> (1) that the supervisor had actual or constructive knowledge that his subordinate was engaged in conduct that posed "a pervasive and unreasonable risk" of constitutional injury to citizens like the plaintiff; (2) that the supervisor's response to that knowledge was so inadequate as to show "deliberate indifference to or tacit authorization of the alleged offensive practices,"; and (3) that there was an "affirmative causal link" between the supervisor's inaction and the particular constitutional injury suffered by the plaintiff.

Id. at 799 (citations omitted). Plaintiff fails to establish the presence of a genuine issue of material fact on the question of Woody's liability as a supervisor in two respects. First, as discussed, the evidence in this case presents no genuine issue of material fact as to whether defendants Robinson and Furman were deliberately indifferent to plaintiff's serious medical need. As such, Woody simply cannot be held responsible on a theory of supervisory liability if his subordinates' acts did not offend the Constitution. Second, the evidence in the record simply fails to connect any inaction on Woody's part and any injury suffered by the plaintiff. Although plaintiff and Woody agree that plaintiff's sister twice complained by letter to Woody that plaintiff was not receiving adequate medical care, it is uncontested that Woody forwarded those letters to the jail's MSD and deferred to that department's decisions regarding plaintiff's medical care. Non-medical officials such as Woody are entitled to rely on the opinions of medical staffers as to the proper course of an inmate's treatment, Miltier, supra, and there is simply no suggestion as to why Woody should not have been entitled to do so in this case. As there is neither an allegation nor any evidence to suggest that Woody was in a position to provide medical care to plaintiff personally, it was constitutionally appropriate for Woody to refer the letters written by plaintiff's sister to the MSD and to rely on the MSD staffers' medical judgment as to plaintiff's care and treatment. Therefore, as there is no genuine issue of material

fact as to whether defendant Woody was deliberately indifferent to plaintiff's serious medical needs, judgment will be granted in this defendant's favor.

## IV. Conclusion

For the foregoing reasons, defendants' Motion for Summary Judgment will be granted. An appropriate Order and judgement shall issue.

Entered this 19th day of August 2008.

/s/
Gerald Bruce Lee
United States District Judge

Alexandria, Virginia